# Exhibit A

# ENDECA TECHNOLOGIES, INC.

## LICENSE, SUPPORT AND SERVICES AGREEMENT

This License, Support, and Services Agreement (the "License Agreement" or "Agreement") is entered into by and between Endeca Technologies Inc., a Delaware corporation, having its principal place of business at 55 Cambridge Parkway, Cambridge, Massachusetts 02142 ("Endeca") and Newegg Computers, a California corporation, having its principal place of business at 17708 Rowland St., Industry, CA 91747 and including its parent, wholly-owned subsidiaries and affiliates ("Customer") as of the Effective Date on the Order Form entered into by and between Endeca and Customer contemporaneously herewith. All capitalized terms not defined herein shall have the meaning ascribed to them in the Order Form.

1. Definitions.

   1.1. "Confidential Information" means (a) a party's business plans, personally identifiable customer information, technology, and other information whether written, oral, recorded on tapes or in any other media or format; or (b) any Software or Documentation provided to Customer by Endeca; or (c) any Customer Materials or other personally identifiable information of Customers' customers, provided by or made available to Endeca by Customer in the course of this Agreement.

   1.2. "Customer Materials" means software, equipment, specifications, data, or other material proprietary to Customer and provided to Endeca for Endeca to use to provide the Services.

   1.3. "Documentation" means the documentation provided to Customer with the Software.

   1.4. "Endeca Technology" means Endeca's technology used to provide Implementation Services to Customer, including without limitation software tools, hardware designs, algorithms, software, architecture, class libraries, objects and documentation, network designs, know-how, trade secrets and any related Intellectual Property Rights (whether owned by Endeca or licensed to Endeca from a third party) and derivatives, improvements, enhancements or extensions during or after the Term of this Agreement by or for Endeca whether or not in connection with the Implementation Services provided to Customer.

   1.5. "Intellectual Property Rights" means any patent, copyright, trademark, trade secret, trade dress, inventions, discoveries, technology, know-how, confidential and proprietary information, or other intellectual or industrial property rights or proprietary rights arising under the laws of any jurisdiction.

   1.6. "Licensed Materials" means the Software and Documentation, collectively.

   1.7. "Object Code Software" means those portions of the Software provided in object code format.

   1.8. "Implementation Services" means professional services performed by Endeca for Customer pursuant the provisions described on the Order Form, and as more fully described in the Statement of Work.

   1.9. "Software" means Endeca's software set out on the Order Form, including the User Interface Source Code Software and Object Code Software

   1.10. "User Interface Source Code Software" means that portion of the Endeca software, provided in source code format that defines the parameters and configuration of the user interface.

   1.11. "Specifications" means the specifications set forth in the Statement of Work that the Implementation Services will meet.

2. Software License.

   2.1. Grant. Subject to the terms of this Agreement, Endeca grants to Customer a limited, non-exclusive, non-transferable license, without the right to sublicense, during the Term (a) to install and use the Licensed Materials for the Application set out

CONFIDENTIAL
V1003

Initials   Endeca: _____
          Customer: _____

in the Order Form, and (b) to modify the User Interface Source Code Software and to use such modified software.

2.2. **Additional Restrictions on Use.** Customer shall not, and shall not permit any third party to (i) modify or otherwise create any derivative work of any part of the Licensed Materials, except for the User Interface Source Code Software in accordance with the provisions hereof, or (ii) permit any third party to use the Licensed Materials for any purpose, including but not limited to third-party training, commercial time-sharing or service bureau use, or (iii) sell, license, sublicense, distribute, assign or otherwise transfer to a third party the Licensed Materials or any copy thereof, in whole or in part, without Endeca's prior written consent.

2.3. **Copies.** Customer shall not copy the Licensed Materials (other than the User Interface Source Code Software) except for installing the Object Code Software on Production Servers for which Customer has paid License Fees for use with the Licensed Application as described in the Order Form to the Agreement, loading the Software into computer memory for the purpose of executing the program, and making back-ups of the servers on which the Software is installed for use in restoring same following equipment or software malfunction, failure or overload. For the avoidance of doubt, the parties record that "Production Server" means an application server that hosts one or more sites that can be accessed by end users of the Licensed Application. Customer may also install the software on stand-by application servers of the same or lesser CPU Tier as the Production Server, that can be instantly substituted for the Production Server if the latter fails or is taken out of service. Customer also may make a reasonable number of copies of the Licensed Materials solely for back-up, archival and development server use. Any copies of the Licensed Materials made by Customer are the exclusive property of Endeca.

2.4. **No Reverse Engineering.** Customer shall have no rights to any source code for the Object Code Software. Customer agrees that it shall not cause or permit the disassembly, decompilation or reverse engineering of the Object Code Software or otherwise attempt to gain access to the source code to the Object Code Software. If applicable law requires access to such source code for some purpose, such as interoperability with other software, and Customer desires access for that required purpose, Customer shall notify Endeca, and

Endeca shall have the option, in its discretion, to (i) perform the work to derive any required information at Endeca's usual consulting rate, or (ii) allow Customer access to the source code of the Object Code Software solely for the legally required purpose.

2.5. **Export Law Assurances.** Customer shall comply with all export and re-export restrictions, laws and regulations of the U.S. Commerce Department and other U.S. agencies and authorities.

2.6. **Reservation of Rights.** Endeca reserves all rights not otherwise expressly granted in this Section 2.

3. **Delivery of Implementation Services.** Subject to payment of the Implementation Service Fees, Endeca agrees to provide the Implementation Services identified on the Order Form, and more fully in the Statement of Work attached to this Agreement. Endeca shall use commercially reasonable efforts to perform such Implementation Services within the relevant timeframes, such timeframes representing estimates and not guarantees of the time it will take Endeca to perform such Implementation Services.

4. **Payment; Taxes.**

4.1. **Fees.** In consideration for the license granted by Endeca, and Support Services provided under this Agreement, Customer shall pay Endeca the License Fees in the amounts and in the manner set forth in the Order Form for the Initial Term. In consideration for the Implementation Services described on the Order Form (if any), Customer shall pay Endeca the Implementation Services Fees in the amounts and in the manner set forth on the Order Form. Any amounts not paid when due shall accrue interest at the lesser of one and one-half percent (1.5%) per month, or the maximum rate allowed by law, whichever is less. Unless otherwise stated in the Order Form, after the Initial Term, Endeca may change the License Fees for the license hereunder for any renewal term on ninety (90) days' notice. Unless otherwise stated in the Order Form, all License Fees are exclusive of out-of-pocket expenses (incurred pursuant to this Agreement, including but not limited to those incurred in providing the Implementation Services) which shall be invoiced to and paid by Customer within thirty (30) days.

4.2. Taxes. Customer shall, in addition to the other amounts payable under this Agreement, pay all applicable customs, duties, sales, use, value added or other taxes, federal, state or otherwise, however designated, which are levied or imposed by reason of the transactions contemplated by this Agreement, excluding only taxes based on Endeca's net income. All payments hereunder shall be grossed-up for any withholding tax on royalty income imposed by a foreign governmental entity. Customer agrees to hold Endeca harmless from all claims and liability arising from Customer's failure to report or pay any such taxes, duties or assessments.

5. Ownership. Endeca or its licensors own and shall retain all proprietary rights, including all patent, copyright, trade secret, trademark and other intellectual property rights, in and to the Licensed Materials, Endeca Technology, and any enhancements, updates or other modifications thereto made by any entity. Customer acknowledges that the license granted under this Agreement does not provide Customer with title to or ownership of the Licensed Materials or Endeca Technology, but only a right of limited use under the terms and conditions of this Agreement.

Notwithstanding the foregoing, Customer is hereby authorized to develop configuration files by modifying (or otherwise writing code to effect) the User Interface Source Code Software (the "Configuration"); all such Configuration Files written by the Customer shall belong exclusively to Customer and Customer retains all rights, title and interest therein.

In such case, Customer shall permit Endeca to (on its own and without referring to the underlying code for the Configuration Files) create configuration files (or other software) for its own use or for any other third-party that are (is) substantially similar to the "look-and-feel" of the Configuration Files, but such permission shall not extend to Customer's trademark(s), servicemark(s), logo(s), or taglines in such look-and-feel.

If Endeca creates and/or develops such Configuration Files on behalf of Customer, whether as part of Endeca's provision of the Implementation Services or otherwise, Endeca shall own all right, title and interest therein, but shall license to Customer the use of such Configuration Files (only) on the same terms as described in this Agreement, and the use thereof shall be included in the License Fee.

6. Customer's Obligations for Support. Customer will designate up to two (2) contact person(s) (or such other replacement individual as Customer may designate in writing) (the "Contact Persons") who shall be the sole contacts for the coordination and receipt of the Support Services set forth in the Software & Operational Support Addendum, such timeframes indicating estimates and not guarantees of the time it will take to Endeca to perform the relevant action(s). Each Contact Person shall be knowledgeable about the Software. If Endeca is unable to contact any designated Contact Person through the specified means for a period of time and such contact would be helpful for performing the Support Services, Endeca may refuse to perform services until Endeca is able to contact a designated Contact Person, in which case the times for Response set forth in the Software & Operational Support Addendum will be suspended for such period of time. Customer will be responsible for installing any error correction, Update, and Upgrade. (All capitalized terms in this Section 6 only, not defined in this Agreement or in the Order Form, shall have the meaning(s) ascribed to them in the Software & Operation Support Addendum.)

7. Limited Warranty.

7.1. Scope of Limited Warranty. Endeca warrants to Customer that for two hundred seventy days (270) days from the initial date on which the Software is used commercially, the Software as delivered will perform substantially in accordance with the Documentation and Specifications (if relevant). Endeca's sole liability and Customer's exclusive remedy under this limited warranty shall be, at Endeca's election, to correct any failure to conform to the above warranties, to replace the defective software with conforming software, or to accept return of the Licensed Materials and refund the License Fees and Service Fees paid to Endeca by Customer. These remedies are available only if Customer promptly notifies Endeca in writing upon discovery of the non-conformity, within the warranty period, Customer provides reasonable amount(s) of relevant information to permit Endeca to duplicate the conditions that gave rise to the non-conformity so that Endeca is able to confirm that such non-conformity exists. This limited warranty shall not apply if the Software has been (i) altered or modified other than by Endeca; (ii) subjected to negligence, or computer or electrical malfunction; or (iii) used, adjusted, installed, or operated other than in accordance with instructions furnished by Endeca or

with an application or in an environment other than that intended or recommended by Endeca.

7.2. Disclaimer of Any Other Warranties. EXCEPT FOR THE EXPRESS, LIMITED WARRANTY PROVIDED IN THIS SECTION 7, ENDECA MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE LICENSED MATERIALS, SERVICES, OR ENDECA TECHNOLOGY AND ENDECA DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE.

8. Confidential Information.

8.1. Confidential Information. Endeca and Customer have previously entered into a Non-Disclosure Agreement dated March 17, 2005 (the "Previous NDA"). The parties hereby affirm the terms of the Previous NDA, and agree that in case of discrepancy between the Previous NDA and the terms described in this Section 8 herein, the parties abide by whichever terms are reasonably judged to be more protective of a party's confidential information, as the case may be.

8.2 Each party ("Recipient") acknowledges that in the course of Endeca performing the Services each party may have access to certain Confidential Information of the other party ("Discloser").

8.3. Duties. Recipient shall maintain the Confidential Information as confidential, and will not use it in any way, for itself or for any third party, except as required to achieve the purposes of this Agreement, nor disclose to any third party (except to Recipient's employees (including those of any parent, wholly-owned subsidiaries, or affiliated entities), consultants, contractors, attorneys, accountants and other advisors (collectively, "Representatives") who have a need to know such Confidential Information for purposes of Recipient's performance of its obligations under this Agreement and who have been informed of and are obligated to comply with the confidential nature of such information and of the terms of this Agreement). Recipient shall be responsible for any breach of this Agreement by any of its Representatives, and agrees, at its sole expense, to take reasonable measures to restrain its Representatives from prohibited or unauthorized disclosure or use of any of Discloser's Confidential Information and will take reasonable precautions to protect the confidentiality of such information, at least as stringent as it takes to protect its own Confidential Information, but in no case less than reasonable care.

8.4. Exceptions. The obligations of the Recipient specified in Section 8.3 above shall not apply to the extent any Confidential Information (i) is known to Recipient prior to receipt from Discloser other than as a result of Recipient's breach of any legal obligation; (ii) becomes known (independently of disclosure by Discloser) to Recipient directly or indirectly from a source having the legal right to disclose such Confidential Information; (iii) is or becomes publicly known, except through a breach of this Agreement by Recipient; or (iv) is required to be disclosed by Recipient to comply with applicable laws or governmental regulations, provided that Recipient gives Discloser reasonable prior written notice of such disclosure sufficient to permit Discloser to contest such disclosure and Recipient takes reasonable and lawful actions to avoid and/or minimize the extent of such disclosure.

8.5. Ownership of Proprietary Information. The Disclosing Party is and shall remain the exclusive owner of Confidential Information and all Intellectual Property Rights therein. No license or conveyance of any such rights to the Recipient is granted or implied under this Agreement.

9. Indemnification.

9.1. Indemnification. Each party (the "Indemnifying Party") will indemnify, defend and hold harmless the other party and its officers, directors, employees, and agents (collectively, the "Indemnified Party") from and against any and all claims, demands, costs, damages, settlements, liabilities, losses, and expenses (including, but not limited to, reasonable attorneys' fees and court costs) (collectively, "Losses") of any kind whatsoever, directly and to the extent arising out of any third party claim, suit, action, or proceeding (each, an "Action") that, in the case where Customer is the Indemnifying Party, any Customer Materials, or in the case where Endeca is the Indemnifying Party, the Licensed Materials, Services, and Endeca Technology (in either case, the "Indemnified Material"), provided hereunder to the Indemnified Party or any portion thereof, or the Indemnified Party's exercise of its rights under this Agreement with respect to the Indemnified Material in accordance with the Agreement, infringe on the Intellectual Property Rights of any third party or

constitute a misappropriation of the trade secrets of a third party.

9.2. Notice; Control. The Indemnifying Party's indemnification obligations under Section 9.1 shall be conditioned upon: (i) the Indemnified Party providing the Indemnifying Party with prompt written notice of the existence of any Action; (ii) the Indemnifying Party having, at its option, sole control and authority over the defense or settlement of such Action; and (iii) the Indemnified Party cooperating fully with the Indemnifying Party, at the Indemnifying Party's sole cost and expense, in the defense of any Action. The Indemnifying Party shall not accept any settlement which imposes liability not covered by these indemnifications or restrictions on the Indemnified Party without the Indemnified Party's prior written consent, which consent shall not be unreasonably withheld or delayed. The Indemnified Party may participate in the defense of any claim through its own counsel, and at its own expense.

9.3. Injunction. In the event that any Indemnified Material is held in a suit or proceeding to infringe any Intellectual Property Rights of a third party (or constitute the misappropriation of a trade secret of a third party) and the use of such Indemnified Material is enjoined, or, in the case where Customer Materials are the Indemnified Material, Customer, or, in the case where the Services are the Indemnified Material, Endeca, reasonably believes that the Indemnified Material is likely to be found to infringe or constitute a misappropriation, or likely to be enjoined, then, Customer or Endeca, as the case may be, shall at its sole cost and expense and at its option, either (i) procure for the other party the right to continue using such Indemnified Material in accordance with this Agreement, (ii) modify such Indemnified Material so that it becomes non-infringing or no longer constitutes a misappropriation, without affecting the basic functionality of such Indemnified Material; provided, however, that if (i) and (ii) are not practicable Customer or Endeca, as the case may be, shall have the right, in its sole discretion, to terminate this Agreement with respect to such Indemnified Material by giving the other party thirty (30) days prior written notice. In case of such a termination by Endeca, Customer's sole remedy shall be a pro-rata refund of any pre-paid (but un-earned) License Fees.

9.4. Exclusion. The Indemnifying Party shall have no obligation for any claim of infringement arising from: (a) use of the Indemnified Materials in conjunction with any data, equipment or software not provided by the Indemnifying Party, where the Indemnified Materials would not themselves be infringing or otherwise the subject of the claim, (b) use of the Indemnified Materials in a manner not described in this Agreement or in any documentation supplied to the Indemnified Party where the Indemnified Materials would not themselves be infringing or otherwise the subject of the claim but for such use; (c) any modification to the Indemnified Materials not made or authorized by Indemnifying Party where the Indemnified Materials would not themselves be infringing or otherwise the subject of the claim but for such modification; (d) use of the Indemnified Materials in any unlawful, improper or inappropriate manner or for any unlawful purpose where the Indemnified Materials would not themselves be infringing or otherwise the subject of the claim but for such use; (e) the Indemnified Party's continued use of a version of the Indemnified Materials other than the most recently released version provided to the Indemnified Party, where such infringement would not have occurred if such most recently released version had been used; or (f) any claim of infringement of any Intellectual Property Right owned by the Indemnified Party or any affiliate of the Indemnified Party.

9.5. Partial Claims. In the event a claim is based partially on an indemnified claim and partially on a non-indemnified claim, or is based partially on a claim indemnified by one party and partially on a claim indemnified by the other party any payments and reasonable attorney fees incurred in connection with such claims are to be apportioned between the parties in accordance with the degree of cause attributable to each party.

9.6. Sole Remedy. This Section 9 states the Indemnified Party's sole remedy and the Indemnifying Party's exclusive liability in the event that the Indemnified Material infringes on or misappropriates the intellectual property rights of any third party.

10. Limitations of Liability.

10.1. IN NO EVENT SHALL ENDECA'S TOTAL LIABILITY ARISING UNDER THIS AGREEMENT EXCEED THE AMOUNT PAID BY CUSTOMER TO ENDECA HEREUNDER IN THE TWELVE (12) MONTHS PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY (LESS ANY AMOUNTS PREVIOUSLY PAID).

10.2. EXCEPT (A) IN THE CASE OF INDEMNITY OBLIGATIONS UNDER SECTION 9 HEREUNDER, OR (B) IN THE CASE OF CUSTOMER, EXCEPT FOR A INFRINGEMENT OF ENDECA'S INTELLECTUAL PROPERTY IN THE LICENSED MATERIALS, IN NO EVENT WILL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, OR OTHER INDIRECT DAMAGES, OR FOR LOST PROFITS, REVENUE, OR DATA, OR COSTS OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES ARISING OUT OF THIS AGREEMENT, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY (INCLUDING NEGLIGENCE), EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EACH PARTY ACKNOWLEDGES THAT THE AMOUNTS PAYABLE HEREUNDER ARE BASED IN PART ON THESE LIMITATIONS, AND FURTHER AGREES THAT THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

11. Term and Termination.

11.1. Effective Date and Term. This Agreement and the license granted hereunder shall be effective as of the Effective Date and, unless earlier terminated in accordance with this Section 11, shall continue for the Initial Term set out in the Order Form after the Effective Date. This Agreement shall be renewed automatically for an one (1) year renewal term (and Customer shall accordingly be responsible for the applicable License Fees for the renewal term) unless one party gives the other party notice of its intent not to renew sixty (60) days prior to the expiration of the then-current term.

11.2. Termination. Either party shall have the right to terminate this Agreement and the license granted herein in the event: (i) the other party fails to comply with any of the terms and conditions of this Agreement and such default has not been cured within thirty (30) days after written notice of such default to the other party; or (ii) the other party terminates or suspends its business, makes an assignment for the benefit of creditors, or has wound up or liquidated, voluntarily or otherwise.

11.3. Effect of Termination. The rights and obligations of Endeca and Customer in Sections 4 (for unpaid amounts), 5, 7.2, 8, 9, 10, 11.3, and 12 shall survive termination of this Agreement. Within five (5) days after termination of this Agreement, Customer shall return to Endeca or destroy, at Customer's expense, the Licensed Materials, including all copies thereof, and deliver to Endeca a certification, in writing signed by an officer of Customer, that the Licensed Materials and all copies thereof have been returned or destroyed, as requested by Endeca, and their use discontinued. On termination, Customer shall pay all License Fee amounts (or other amounts due) that have accrued, and in the case of termination due to material breach by Customer, all License Fee amounts for the remainder of the Initial Term or (if any renewal term has been exercised, amounts for such renewal term), as the case may be, shall be accelerated and due in full immediately.

12. General.

12.1. Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and permitted assigns. Customer shall not assign or otherwise transfer this Agreement or any rights or obligations hereunder, in whole or in part, whether by operation of law or otherwise, without Endeca's prior written consent, such consent not to be unreasonably withheld or delayed. Notwithstanding the foregoing, Customer shall be permitted to assign or otherwise transfer this Agreement in whole to its parent, wholly-owned subsidiary or affiliate as part of a corporate restructuring or reorganization of Customer without Endeca's prior written consent, so long as prior notice of such assignment, restructuring or reorganization is provided to Endeca. The parties specifically agree that it shall not be unreasonable for Endeca to require that (a) Customer stand as guarantor in case of any assignment; or (b) there be no assignment to an entity owned (fully or partially) by a competitor of Endeca, such to be reasonably determined by Endeca. Any purported transfer, assignment or delegation without such prior written consent will be null and void and of no force or effect.

12.2. Entire Agreement. This Agreement represents the entire agreement between the parties, and supersedes all prior agreements and understandings with respect to the matters covered by this Agreement. Customer agrees that it has not entered into this Agreement based on any representations other than those contained herein. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the party to be charged.

12.3. Delays. Neither Party shall be liable for, or be considered in breach of or default under this Agreement on account of, any delay or failure to perform as required by this Agreement as a result of any causes or conditions which are beyond such Party's reasonable control including, but not limited to, governmental requirements, work stoppages, fires, civil disobedience, embargo, war, riots, rebellions, earthquakes, strikes, floods, water and the elements, inability to secure permits, raw materials, transport, acts of God and similar occurrences and which such Party is unable to overcome by the exercise of reasonable diligence.

The non-performing Party shall tender written notice to the other Party of any such event or condition which may arise during the term of this Agreement which could prevent reasonable performance of this Agreement, within fourteen (14) days of encountering the condition. The non-performing Party shall be under no obligation to perform any service or deliver any work should such service or delivery constitute a violation of any applicable law. The other Party's sole remedy for an occurrence of one of the conditions set forth in this Article, or for any delay in provision of services hereunder shall be termination of this Agreement pursuant to provisions hereof.

12.4. Governing Law; Jurisdiction. This Agreement shall in all respects be governed by the laws of the Commonwealth of Massachusetts, excluding, as applicable: (ii) its conflicts of laws principles; (ii) the United Nations Convention on Contracts for the International Sale of Goods; (iii) the 1974 Convention on the Limitation Period in the International Sale of Goods; (iv) the Protocol amending the 1974 Convention, done at Vienna April 11, 1980; and (v) the UCITA. The parties hereby agree that all disputes arising out of this Agreement shall be subject to the exclusive jurisdiction of and venue in the federal and state courts within Suffolk County, Massachusetts. The parties hereby consent to, and waive defenses of, the personal and exclusive jurisdiction and venue of these courts. Notwithstanding the foregoing, either party may seek an injunction to protect its intellectual property rights in any jurisdiction.

12.5. Severability. If any of the provisions of this Agreement is held by a court of competent jurisdiction to be invalid under any applicable statute or rule of law, such provision shall, to that extent, be deemed omitted, and the remaining portions of this Agreement shall remain in full force and effect.

12.6. Waiver. The waiver of one breach or default or any delay in exercising any rights shall not constitute a waiver of any subsequent breach or default.

12.7. Notices. All notices permitted or required under this Agreement shall be in writing and shall be delivered in person or mailed by first class, registered or certified mail, postage prepaid, or by reputable overnight carrier, to the address of the party specified on the Cover Page of the Order Form or such other address as either party may specify in writing. Such notice shall be deemed to have been given upon receipt.

12.8. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

12.9. Headings. The headings are for convenience and shall not be used to construe this Agreement.

12.10. No Agency; Independent Contractors. Nothing contained in this Agreement shall be deemed to imply or constitute that either party is the agent or representative of the other party, or that both parties are joint ventures or partners for any purpose.

The parties hereby acknowledge that they have read and understand this Agreement, and together with the Order Form and the exhibits attached thereto or referenced therein, agree to all such terms and conditions.

**ENDECA TECHNOLOGIES, INC.**

By: _[signature]_
Signature

John P. Kelleher
Printed Name

Vice President & General Counsel
Title

6/28/05
Date

**NEWEGG COMPUTERS**

By: _[signature]_
Signature

Stuart Wallock
Printed Name

Director of Marketing
Title

6/28/05
Date

CONFIDENTIAL
V1003

- 8 -