# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

**ALCATEL-LUCENT USA INC.**

    **v.**

**OVERSTOCK.COM, INC.; and NEWEGG INC.;**
**MAGNELL ASSOCIATE INC. d/b/a**
**NEWEGG.COM;**

**Civil Case No. 6:09-CV-422-LED**

**JURY DEMANDED**


**<u>JURY INSTRUCTIONS</u>**

## I.     JURY CHARGE

**MEMBERS OF THE JURY**:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury, are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case. After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1.     GENERAL INSTRUCTIONS

A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers to each question on the verdict form must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.1     Considering Witness Testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all

evidence. When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.2    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition.   A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the

witness's testimony may be presented, under oath, in the form of a deposition. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible, the same as if the witness had been present and had testified from the witness stand in court. In addition, neither party is required to call every possible witness.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## 1.3   Demonstrative Exhibits

Certain exhibits shown to you are illustrations. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

4

### 1.4     Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an expert witness—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

### 2.     SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.

### 2.1     Plaintiff's Contentions

In this case, the plaintiff, Alcatel-Lucent USA, Inc. ("Alcatel-Lucent USA"), contends that the Defendants use technology that infringes asserted claims of the patents-in-suit.  When I use the term "Defendants," that term collectively refers to the following parties:

- Overstock.com, Inc., who may be referred to as Overstock;

- Newegg Inc. and Magnell Associate Inc. d/b/a newegg.com, who may be referred to as Newegg.

Alcatel-Lucent USA contends that Defendants use technology that infringes Claims 1 and 5 of the '131 patent, Claims 1 and 2 of the '656 patent and Claim 10 of the '507 patent.

Collectively, these claims of the '131 Patent, the '656 Patent and the '507 Patent will be referred to as the "Asserted Claims."

## 2.2    Defendants' Contentions

Defendants contend that they do not infringe any claim of the Alcatel-Lucent USA-patents-in-suit. Defendants also contend that the asserted claims of the '131 patent are invalid. Invalidity is a defense to infringement.  Generally, Defendants contend that the '131 patent is invalid because the claimed inventions were not new or would have been obvious to one of ordinary skill in the art.  As such, Defendants contend that Alcatel-Lucent USA is not entitled to any damages.

## 2.3    Issues to be Decided

Your job is to decide whether any of the asserted claims of the '131 Patent, the '656 Patent and the '507 Patent have been infringed, by whom they have been infringed, and whether any of the asserted claims of the '131 Patent are invalid.

If you decide that any claim of  the '656 and '507 patent have been infringed by any Defendant, you will then need to decide the amount of money damages to be awarded to Alcatel-Lucent USA as compensation for the infringement.  If you decide that any claim of  the '131 patent has been infringed by any Defendant and is also not invalid, you will then need to decide the amount of money damages to be awarded to Alcatel-Lucent USA as compensation for the infringement.

## 2.4    Burdens Of Proof

For Alcatel-Lucent USA's claims, the burden of proof is on Alcatel-Lucent USA. Defendants have the burden of proof for their affirmative defenses.  Infringement determinations are made on a claim-by-claim basis. Alcatel-Lucent USA has the burden of proving infringement

and damages. Alcatel-Lucent USA must prove infringement and damages by a preponderance of the evidence. Validity determinations are made on a claim-by-claim basis. Defendants have the burden of proving invalidity of the '131 patent. Defendants must prove invalidity by clear and convincing evidence.

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, that means the evidence must persuade you that that claim or defense is more likely true than not true. Clear and convincing evidence means the the evidence produces in your mind a firm belief or conviction as to the matter at issue. This is a higher burden of proof than proof by a preponderance of the evidence.

In determining whether any fact has been proved, you should, unless otherwise instructed, consider all of the evidence, including the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

## 3.    CLAIMS OF THE PATENTS-IN-SUIT

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products or systems, such as machines, or processes or methods for making or using a product or system. Claims are usually divided into parts or steps, called "requirements" or "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each a separate limitation (requirement) of the claim.

## 3.1      Construction of the Claims

In deciding whether or not the accused technology infringes a patent, the first step is to understand the meaning of the words used in the patent claims. It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not the patent is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copies of the patents that you have been given as I discuss the claims at issue here.

## 3.2      Open-Ended or "Comprising" Claims

If you turn to the '131 Patent, the beginning, or preamble, of Claim 1 uses the word "comprising."   "Comprising" means "including" or "containing, but not limited to." That is, where a claim includes the word "comprising" at the beginning of the claim, and if you decide that Defendants' systems includes all the requirements in the claims, the claim is infringed. This is true even if the accused system includes components in addition to those requirements so long as all of the requirements of the claims are present.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

## 3.3      Independent and Dependent Claims

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. It is not necessary to look at any other claim to determine what an independent claim covers.

In this case, claims 1 and 5 of the '131 patent, claim 1 of the '656 patent, and claim 10 of the '507 patent are independent claims.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim to which it refers, as well as the additional limitations recited in the dependent claim itself. In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim or claims to which it refers.

In order to find infringement of a dependent claim, you must first determine whether the independent claim to which it refers has been infringed.  Thus, you must consider all limitations of both the dependent claim and independent claim from which it depends.  If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused product.  If each additional requirement has been included, then the dependent claim has been infringed.

For example, claim 2 of the '656 Patent is a dependent claim of independent claim 1. Because dependent claim 2 includes all of the limitations of claim 1, if claim 1 of the '656 Patent is not infringed, then claim 2 of the '656 Patent cannot be infringed either.

## 3.4    Interpretation of Claims

In deciding whether or not the accused technology does or does not infringe a patent claim, or whether the asserted prior art does or does not invalidate a patent claim, the first step is to understand the meaning of the words used in the patent claims. The meaning of the words in the patent claims is the same for both the infringement and the validity determinations.

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case. My interpretation of those claims appears in Appendix B to this Charge. You must accept the interpretations contained in Appendix B as correct.

**3.5     Glossary of Patent Terms**

A glossary of patent terms is also contained in Appendix A to this Charge.

**4.     INFRINGEMENT**

**4.1    Determining Infringement**

Any person or business entity that, without the patent owner's permission, makes, uses, sells, or offers to sell a device that is covered by at least one claim of a patent, before the patent expires, infringes the patent.

In this case, Alcatel-Lucent USA contends that Defendants have infringed Claims 1 and 5 of the '131 patent, claims 1 and 2 of the '656 patent, and claim 10 of the '507 patent.  Only the claims of a patent can be infringed. You must consider each claim individually.

You must compare each of the asserted claims, as I have defined them, to each of Defendants' accused systems, and determine whether or not there is infringement. In order to prove infringement, Alcatel-Lucent USA must prove that by a preponderance of the evidence that Defendants' accused systems include each and every requirement or limitation of the claims.

If a party's accused system or product omits any requirement recited in the asserted patent claims, then there is no infringement for that claim. For direct infringement, a party asserting infringement is not required to prove that the party accused of infringement intended to infringe or knew of the patent.

**4.2     DIRECT INFRINGEMENT – LITERAL INFRINGEMENT**

You must decide whether Defendants have made or used within the United States a system covered by an asserted claim of the patents-in-suit. You must compare each asserted claim to each Defendants' accused systems to determine whether every limitation or requirement of the claim is included in the accused system.

To prove literal infringement for a particular patent claim, Alcatel-Lucent USA must prove that it is more likely true than not true that a Defendants' system includes every limitation or requirement in that claim. If a Defendants' system omits any limitation or requirement recited in Alcatel-Lucent USA patent claims, the Defendant does not infringe that claim.

Direct infringement requires a party to perform or use each and every step of a claimed method.  Where no one party performs all of the steps of a claimed method but multiple parties combine to perform every step of the method, that claim will nevertheless be directly infringed if one party exercises control or direction over the entire method so that every step is attributable to the controlling party. Mere arms-length cooperation between the parties is not enough to establish direct infringement.

You must be certain to compare the accused product(s) with each claim that such product(s) is alleged to infringe.  Such accused product(s) should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Alcatel must prove that it is more likely true than not true that Defendants directly infringed the patent claims.  For literal infringement, Alcatel is not required to prove that Defendants intended to infringe or knew of the patent.

11

**4.3      DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS**

Alcatel-Lucent USA's alleges that Defendant Overstock infringes claim 10 of the '507 patent under the "doctrine of equivalents."   You should not consider the "doctrine of equivalents" for any other claims.

To prevail on its allegation of infringement, under the "doctrine of equivalents," a party must prove that it is more likely true than not true that the accused system or product contains requirements identical or equivalent to each claimed requirement of the patented invention. You must proceed on a requirement-by-requirement basis. The party alleging infringement must establish that each requirement in the claim is present in the accused system or product, either literally or under the doctrine of equivalents.   Such equivalence must be determined for individual requirements of the claimed invention, not the invention as a whole.

A claim requirement is present in an accused system or product under the doctrine of equivalents if the difference between the claim requirement and a corresponding aspect of the accused product is insubstantial.

In making this determination, you may consider whether the corresponding aspect in the accused system or product performs substantially the same function in substantially the same way to achieve substantially the same result as the requirement in the claim. You may also consider whether people of ordinary skill in the art believed that the corresponding aspect of the accused product and the requirement recited in the patent claim were interchangeable at the time of the alleged infringement. The interchangeability of the two features must have been known to persons of ordinary skill in the field of technology at the time the infringement began.

Under the doctrine of equivalents, those of ordinary skill in the art do not have to know of the equivalent when the patent application was filed or when the patent issued. Thus, the

inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents.

## 5.      INVALIDITY – GENERALLY

Patent invalidity is a defense to patent infringement. The granting of a patent by the United States Patent Office carries with it the presumption that the patent is valid**.**  Defendants have the burden of overcoming the presumption and proving invalidity by clear and convincing evidence.  Evidence of prior art which was not reviewed by the PTO may be more probative of meeting this standard, than prior art which was reviewed by the PTO.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid. Claims are construed the same way for the purposes of determining infringement as for determining invalidity.  In this case, Defendants contend that the asserted claims of the '131 patent are invalid as anticipated or obvious.  You are to only make a determination as to validity for the '131 patent.

I will now instruct you on the invalidity issues you should consider. As you consider these issues, remember that Defendants must prove by clear and convincing that the claims of the '131 patent are invalid.

### 5.1      Anticipation

Defendants contend that the asserted claims of the '131 patent are invalid because the claimed inventions are not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single previous publication or patent that predates the claimed invention. In patent law, such previous   publication or patent is called a "prior art

reference." If a patent claim is not new we say it is "anticipated" by a prior art reference. Defendants must prove by clear and convincing evidence that the claims asserted against them were anticipated.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of invention.

Here is how a party can show that the patent claim was not new:

- if the claimed invention was known or used by others in the United States, or patented or described in a printed publication in this or a foreign country, before the date it was invented by the patent applicant; or

- if the claimed invention was already patented or described in a printed publication anywhere in the world, or in public use or on sale in the United States, more than one year prior to the date of the application for the patent in the United States.  An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field even if it is difficult to find.   In this case, the application date for '131 Patent is December 30, 1992.

- if the claimed invention was already described in another published U.S. patent application or issued U.S. patent that was based on a patent application filed before the date of invention.

- if the claimed invention was already made by someone else in the United States before the date of invention if that other person had not abandoned the invention or kept it secret.

If a patent claim is not new as explained above, you must find that claim invalid.

### 5.1.1   Anticipation by Printed Publication

The disclosure in the printed publication does not have to be in the same words as the claim, but all the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at one reference would be able to make and use at least one embodiment of the claimed invention.

Printed publications may include articles, treatises, and other written materials. A printed publication will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents. It is not necessary that the printed publication be available to every member of the public. An electronic publication, including an on-line or internet publication, is a "printed publication" if it is at least reasonably accessible to those interested in the field even if it is difficult to find.  The date that a printed publication becomes prior art is the date that it becomes available to the public.

### 5.1.2   Anticipation by Public Knowledge or Use or Sale

A prior public use may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person. Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

### 5.2   OBVIOUSNESS

A patent claim is invalid if the claimed invention, as a whole, would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention, as a whole, before the time of the claimed invention, although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of

ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1.    Whether the party contending that the claim is obvious has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2.    Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3.    Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact. You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.      The parties have agreed on the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.      You must decide the scope and content of the prior art. In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention. Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been known to one of ordinary skill in the field of the invention.

3.      You must decide what difference, if any, existed between prior art and the claim requirements.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.      Factors tending to show non-obviousness:

1.      commercial success of a product due to the merits of the claimed invention;

2.      a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.      unsuccessful attempts by others to find the solution provided by the claimed invention;

4.      copying of the claimed invention by others;

5.      unexpected and superior results from the claimed invention;

6.      acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;

7.      disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

8.      Other evidence tending to show nonobviousness.

You may consider the presence of any of the list factors A.1-8 as an indication that the claimed invention of the '131 patent would not have been obvious at the time the claimed invention was made.

B.      Factors tending to show obviousness

1.      independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it

2.      other evidence tending to show obviousness.

You may consider the presence of the factor B.1-2 as an indication that the claimed invention would have been obvious at such time.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been

obvious is up to you. Defendants must prove by clear and convincing evidence that the claimed inventions of the '131 patent were obvious.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions. When a patent simply arranges old elements, with each performing the same function it had been known to perform, and yields no more than what one of ordinary skill in the art would expect from such an arrangement, the combination is obvious.

If you find that a claimed invention of the '131 patent was obvious as explained above, you must find that claim invalid.

## 5.3     LEVEL OF ORDINARY SKILL

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  The parties have agreed on the following levels of skill in the art.

For the '131 patent, the level of ordinary skill in the field of the invention would be one who has a B.S. degree in computer science, electrical engineering, or similar disciplines, and two or more years of experience in network communications.

For the '656 patent, the level of ordinary skill in the field of the invention would be an individual who has a B.S. degree in computer science, electrical engineering, or similar disciplines, and two or more years of experience in network communications.

For the '507 patent, the level of ordinary skill in the field of the invention would be an individual who has experience with information retrieval and/or text processing systems, and would likely have a bachelors or masters degree in library or computer science with 2 or more years of computer programming experience, or other equivalent education and technical experience.

**5.4** **LICENSE DEFENSE BY NEWEGG**

Newegg contends that, insofar as it is found to be using the claimed inventions of the '131 patent, it is licensed by Alcatel-Lucent USA's agreement with Microsoft.  Newegg relies on Paragraphs 2.1 and 3.1 of that agreement for a license defense to infringement claims concerning the '131 patent only.  To find that Newegg benefits from the license under 2.1 and 3.1 you must find that Newegg uses Microsoft Covered Technology in an unmodified form to perform an essential feature(s) of at least one claim of the '131 Patent, as those term are used in the agreement.   That Newegg raises this defense should not be understood as an acknowledgment that infringement exists.

**6.** **DAMAGES**

I will now instruct you on damages. If you find that a Defendant has infringed one or more claims of the '656 patent, '507 patent, or a valid claim of the '131 Patent, you must determine the amount of money damages to which Alcatel-Lucent USA is entitled from that Defendant. By instructing you on damages, I do not suggest that one or the other party should prevail. These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate a party for the infringement, but it may not be less than a "reasonable royalty." At the same time, your damages determination must not include additional sums to punish a party or set an example. You may award compensatory damages only for the loss that a party proves was caused by the other party's infringement by a preponderance of the evidence.

## 6.1    Damages − Burden Of Proof

Alcatel-Lucent USA has the burden to prove its damages by a preponderance of the evidence. The party seeking damages has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. Reasonable certainty does not require proof of damages with mathematical precision. However, no party is entitled to damages that are remote or speculative.

## 6.2    Damages — When Damages Begin

The amount of damages Alcatel-Lucent USA can recover is limited to those acts of infringement by the Defendants that occurred after Alcatel-Lucent USA gave them notice that they allegedly infringed the patents in issue. Notice means that Alcatel-Lucent USA communicated to Defendants a specific charge of infringement of the Asserted Claims by the accused products.  This notice is effective as of the date given.

## 6.3    Reasonable Royalty

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringement first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent valid and infringed. In addition, you must assume that the patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

Factual developments occurring after the date of the hypothetical negotiation can inform the damages calculation.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

- The advantages of the patented technology over old technology and the benefits of using the patented technology to the alleged infringer;

- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives;

- Whether the patent owner had an established policy of refusing to license the patent at issue.

- The relationship between the patent owner and alleged infringer, including whether or not they were competitors;

- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from non-patented features, improvements or contributions;

- Licenses or offers to license the patent at issue in this case;

- Licenses involving comparable patents;

- The licensing history of the parties;

- Licensing practices in the relevant industry;

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license; and

- Opinion testimony by qualified experts.

**7.      INSTRUCTIONS FOR DELIBERATIONS**

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.

While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you regarding your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise

directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the court security officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question. After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to deliberate.

**Appendix A**

Glossary of Patent Terms and Claim Constructions

| TERMS | DEFINITION |
|---|---|
| Application | The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO"). |
| Claims | Claims are the numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim. |
| Comprising | The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising." "Comprising" means "including" or "containing." If the accused system includes all of the requirements of the claim following "comprising," the claim is infringed. This is true even if the accused system includes components in addition to those requirements. For example, a claim to a table comprising a tabletop, legs and glue would be infringed by a table that includes a tabletop, legs and glue, even if the table also includes wheels on the table's legs. A table that includes only a tabletop, legs and screws, but no glue, would not infringe the claim. |
| License | Permission to use or make the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee oftentimes called a "royalty" or other consideration. |
| Office Action | Communication from the patent examiner regarding the patent application. |
| Ordinary Skill in the Art | The level of experience, education and/or training that those individuals who work in the area of the |

| | |
|---|---|
| | invention ordinarily possessed. |
| Patent Examiners | Personnel employed by the PTO who review (examine) patent applications to determine whether the claims of a patent application are patentable over the prior art considered by the examiner and whether the disclosure adequately describes the invention. |
| Patent Owner | The patent owner may be the original applicant inventor or any assignee who has acquired the patent by an assignment. |
| Prior Art | Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention was invented and might typically be a patent or a printed publication. |
| Prosecution/File History | The written record of proceedings in the United States Patent and Trademark Office between the applicant and the PTO. It includes the original patent application and later communications between the PTO and the applicant. The prosecution history may also be referred to as the "file history" or "file wrapper." |
| References | Prior art patents and publications used to determine patentability of the patent. |
| Specification | The specification is the information, which appears in the patent and concludes with one or more claims. The specification includes written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it. The specification must describe the invention in sufficient detail to enable others skilled in the art to practice the invention and must describe what the inventor believed at the time of filing to be the best way of making his or her invention. |

**Appendix B**

**Court's Claim Constructions**

| The '131 Patent | | |
|---|---|---|
| **Claim Term** | **Asserted Claim(s)** | **Construction** |
| identifier (claims 1 and 5) | | a unique label assigned to identify |
| transmitting … to said device (claims 1 and 5) | | transmitting information directly to the device without first downloading the information to an intermediate processor (i.e., saving to memory of the intermediate processor for subsequent retrieval) |
| terminal device | | computing device such as a data terminal, workstation, portable computer, or smart phone that enables a user to communicate with a host processor. It manages the actual positioning of objects on its associated display itself and manages its internal memory with the assistance of the host processor. |
| host processor | | computer that communicates with one or more users to provide services such as transaction processing or database access |
| input object type(s) | | kind(s) of displayable graphical symbol that is suitable for display on a user's terminal device and that generates particular input when touched, or manipulated, by a user |
| Choice | | an input object type that may be selected by a user when displayed |
| Entry | | an input object type that solicits information from a user when displayed |
| Text | | an input object type that provides textual information to a user when displayed |
| Image | | an input object type that displays a graphic image |
| presentation data type(s) | | data of the type that represents a particular |

28

|  |  | item to be displayed by the terminal device and that is used by the end-user in a manner that is completely independent of the terminal device. In addition, presentation data types: (i) do not contain methods or executable code; (ii) do not link to, are not embedded in, and do not embed in themselves other presentation data types; and (iii) have parameters that specify input capability, including at least an item identifier to distinguish various data items that will be displayed on a display |
|---|---|---|
| Datum |  | the singular of data |
| Object type(s) |  | The phrase "said plurality of object types" in claim 1(b) of the '131 patent refers as its antecedent basis to the phrase "plurality of input object types" recited in claim 1(a) of the patent. The "object types" at issue in claim 1 are limited to input object types. |

| The '656 Patent | | |
|---|---|---|
| **Claim Term** | **Asserted Claim(s)** | **Construction** |
| Script (claims 1, 2) |  | a series of commands that are interpreted by a program in order to accomplish a particular task |
| modifying said retrieved data as a function of said variables/modified retrieved data (claim 1) |  | changing the retrieved script data in response to the embedded variables/ the results thereof |
| script-based data |  | script-based information |
| embedded variables |  | data whose values can change, based on what the client enters, and their associated identifiers, e.g. a name/value pair |
| information reflective of the previous state of a said script based system/information |  | data reflecting embedded variables in the previous exchange between the client and the server |

| | | |
|---|---|---|
| reflective of the previous state of said script-based communication system | | |

| The '507 Patent | | |
|---|---|---|
| **Claim Term** | **Asserted Claim(s)** | **Construction** |
| | | |
| each record containing the words included in each of the search expressions (claim 10) | | a retrieved record includes at least one of the words present in each individual search expression within the plurality of search expressions |
| art | | There is a typo in claim 10. The claim contains the word "art", but the word should instead be "an". ("… generating a plurality of search expressions, … for providing art [sic: an] equivalent representation …") |